LAW OFFICES
# DAVID WIKSTROM
250 WEST 55TH STREET, 17TH FLOOR
NEW YORK, NY 10019

E-MAIL: DAVID@DAVIDWIKSTROM.COM
WWW.DAVIDWIKSTROM.COM

TELEPHONE: (212) 248-5511
FACSIMILE: (212) 248-2866

August 7, 2025

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 11201

*Denied.*
*Denise Cote*
*8/15/25*

Re: United States v. Jason Christian
    18 CR 41 (DLC)

Dear Judge Cote:

I write to request that the Court order the early termination of Supervised Release for Jason Christian, pursuant to 18 U.S.C. §3583(e)(1).

## Background and Procedural History

Mr. Christian has now completed 28 of the 36 months of supervision that the Court originally imposed. Mr. Christian was arrested on the charges in the underlying criminal case on June 27, 2018, and remanded. On May 8, 2019, he pleaded guilty, and on October 11, 2019, he was sentenced to 80 months' incarceration, to be followed by the aforementioned three-year term of Supervised Release. He was released from prison in March, 2023 and commenced Supervised Release on April 4, 2023. By this motion, Mr. Christian seeks early termination, consisting of the remaining eight months of supervision. The Government defers to the Court and Probation Department. Mr. Christian's supervising Probation Officer Michael Melaika informs me that Probation does not support the application.

The applicable law is well-established. Section 3583(e) provides in pertinent part that

> [t]he court may, after considering the factors set forth in section [3553(a)(1)–(a)(7)] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

Supervised release is distinct from the imprisonment portion of a criminal sentence, 18 U.S.C. §3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony or misdemeanor, *may* include as a part of the sentence a requirement that the defendant be placed on a

Case 1:18-cr-00041-DLC   Document 714   Filed 08/07/25   Page 2 of 6

term of supervised release…) Supervised release is designed to achieve rehabilitative ends, and to assist offenders transitioning from prison to life in the community.(*See* 18 U.S.C. §3553(a)(2)(D); *see also*, S.Rep. No. 98-225, p. 124 (1983)("the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

The Court has authority under 18 U.S.C. § 3583(e)(1) to terminate a term of supervised release at any time after one year of supervised release if the Court is satisfied that two requirements are met. First, early termination must be "warranted by the conduct of the defendant released." 18 U.S.C. § 3583(e)(1). Second, early termination must be in "the interest of justice." Id. Whether to grant a motion to terminate a term of supervised release is a matter completely at the discretion of the Court. Before making the decision, a court must consider the statutory factors in 18 U.S.C. § 3553(a), covering the same "general punishment issues" that would be considered when imposing an initial sentence, "such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F. 3d 32, 35 (2d Cir. 1997).

Argument

At sentencing nearly six years ago, your Honor took a chance on Jason Christian and varied downward from a range of 121-151 months' imprisonment, imposing an 80-month term. He proved to be worthy of that trust: he was a model prisoner, he incurred no disciplinary citations, and he took additional educational and self-betterment courses. Though the Court had recommended Mr. Christian for acceptance into RDAP, that program was suspended at FCI Beckley, Mr. Christian's designated institution, shortly after his arrival in 2020, beginning with the COVID-19 pandemic. It did not resume in time for him to participate in or benefit from it. Nevertheless he earned credits resulted in early release, and at the conclusion of his custodial sentence he went directly onto Supervised Release without an intervening halfway house residency.

Mr. Christian began supervision on April 4, 2023. And for 28 months, between then and now, he has maintained a perfect record. He lives at home with his family. He takes no drugs or alcohol. He <u>does</u> continue to take drug tests, all of which have been negative. In January 2024 he was doing so well that he applied to the RISE program, which admitted him. He obtained additional vocational training and employment. He attended individual and group therapy. In August 2024 he was at the top of his RISE class, and with that record—having been under some form of criminal justice supervision since 2018—he had every expectation of completing RISE successfully, and then seeking early termination in approximately April 2025.

2

But all of that was upended by his arrest, on Aug. 6, 2024, for allegedly having participated with Lasyah Palmer, his codefendant in this case, in a savage gang assault in the Bronx two weeks earlier. Mr. Christian and Mr. Palmer—both of whom were serving terms of Supervised Release on sentences imposed by this Court—were arrested. Bail was set for both at $150,000 at arraignment in Bronx County Supreme Court. However, significant credibility concerns about the veracity of the complaining witness's account induced the Bronx DA, <u>the very next day</u>, to reduce bail on both defendants to ROR.

Mr. Palmer walked free, but Mr. Christian did not. Unlike his identically-situated codefendant, Mr. Christian was charged with nine violations of Supervised Release, and a warrant was issued. Probation instructed Mr. Christian to surrender to the local NYPD Precinct, which he did. For the next few days he was held at Rikers Island before finally being produced in federal court, on August 12th. Thereafter he remained in prison at the MDC until September 12th. Even on that date, some five weeks <u>after</u> the Bronx DA unconditionally released both Palmer and Christian because the complainant's account was false, the Probation Department and Government argued against Mr. Christian's release, while at the same time doing nothing at all vis-à-vis the identically-situated Mr. Palmer. Notwithstanding the opposition, the Court granted the bail application and Mr. Christian was released on that date, but he remained under curfew enforced by geolocation monitoring for five more months. The Bronx indictment was formally dismissed in February 2025, and the Court approved the withdrawal of all nine Specifications against Mr. Christian on Feb. 12, 2025. In total, Mr. Christian spent 37 days in prison, and 150 more days under curfew and electronic monitoring. He lost his place in the RISE program, and was never permitted to rejoin. He lost the opportunity to seek early termination through completion of RISE. Despite these hardships, Mr. Christian picked up precisely where he had been when interrupted. He managed to keep both jobs; he now works 67 hours per week. He lives at home with his family and continues to be drug free. I believe that under these circumstances that early termination of Supervised Release is warranted.

To begin with, there is his record of compliance. He meets or surpasses the factors identified in the Probation Department's Guide to Judiciary Policy[1] as warranting a Probation Department recommendation in favor of early termination. That is, Mr. Christian is not a career offender, he has not committed a sex offense or engaged in terrorism, he presents no identified risk of harm to the public or victim; he is free from any court reported violations over a 12-month period, he has demonstrated the ability to lawfully self-manage beyond the period of supervision, he is in substantial compliance with all conditions of supervision; and he is engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision. Id. § 360.20(c)(1)–(6).

---

[1] Guide to Judiciary Policy, Vol. 8 (Probation and Pretrial Services, Part E (Post-Conviction Supervision), § 360.20(b)–(c) (July 2, 2018).

But his case is unique in that here the Probation Department betrayed its fundamental mission of assisting offenders transitioning from prison to life in the community, of easing the defendant's transition into the community, and of providing a defendant with needed rehabilitation, *see,* 18 U.S.C. §3553(a)(2)(D). I do not argue that it did so in bad faith: the individual discretion of a Probation Department officer is plainly broad enough to authorize initiating violation proceedings against defendants charged with new criminality. Likewise, the scope of that discretion would protect Mr. Palmer's supervising officer, for adopting a wait-and-see forbearance in Palmer's case, especially in light of the compelling disclosures the Bronx DA had made on August 7. Viewed in isolation, either might—in a different context—seem defensible and appropriate under the circumstances. But here they are definitionally irrational. Probation treated identically situated defendants in opposite fashion, in a dramatic example of disparity. Furthermore, the individualized responses were utterly arbitrary: the RISE candidate with a perfect compliance record was summarily remanded, while the defendant with three-previous-violations—and who vowed in open court at his last VOSR sentencing to reoffend—remained on supervision in the community. And those determinations remained in place for months, as Mr. Christian sat in jail or at home while the Probation Department ignored their utter backwardsness. This irrationality did real, permanent harm to Mr. Christian who lost the benefit of what he had worked hard to achieve in RISE.

My point is not that Mr. Christian should get a break in recognition of an unintentional wrong done him. It is that he should get a break in recognition of <u>how he responded to the unintentional wrong done to him</u>. No one has "demonstrated the ability to lawfully self-manage beyond the period of supervision" better than Jason Christian. No one has better shown respect for the law, or less of a need for yet more correctional treatment, than Mr. Christian. He surrendered to a police station for a crime he was innocent of and had just been ROR'd on, because Probation told him to. He submitted to ongoing detention in court at great personal discomfort and distress (*see,* Transcript of Conference Aug. 12, 2024, p. 7-9) because he knew that the law required it given the nature of the charges, irrespective of their truth. And he volunteered to be under electronic monitoring and curfew as a bail condition, without complaining about the unfairness of this request given Probation's passivity vis-à-vis Palmer.

I acknowledge that Christian's personal circumstances are neither new, nor "extraordinary." And there are a number of decisions denying §3583(e)(1) motions while making express reference to the absence of such circumstances. Those decisions appear to come from language in the Second Circuit's opinion in *United States v. Lussier,* 12 F.3d 32, 36 (2d Cir. 1987). There the Circuit wrote that "[o]ccasionally, changed circumstances—for instance, exceptionally good behavior by the defendant, or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)."

4

But in *United States v. Parisi*, 821 F.3d 343, 347 (2nd Cir. 2016), the Circuit clarified that *Lussier* does not in fact require new or changed circumstances. Rather, *Lussier* "simply recognizes that changed circumstances may in some instances justify a modification." The paramount requirement is that courts consider the usual statutory sentencing factors when deciding whether to modify or terminate supervised release. *Id.* "So long as the court, when modifying supervised release conditions, considers the relevant [sentencing factors]," there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." (*United States v Trotter*, 321 F. Supp.3d 337, 360 (E.D.N.Y. 2018), *citing Parisi*.)

Nor is it necessary for a defendant to show "exceptionally good behavior." There are numerous recent cases where judges have granted motions for early termination without making any such finding. *See, e.g., United States v. Gallagher*, 22 CR 122 (VEC)(S.D.N.Y. Feb. 1, 2024); *United States v. Martinez*, 19 CR 537 (S.D.N.Y. Oct. 26, 2023; *United States v. Wang*, 18 CR 882 (LTS)(S.D.N.Y. Oct. 25, 2023); *United States v. Hasanoff*, 10 CR 162 (KMW)(July 1, 2022); *United States v. Williams*, 02 CR 1372 (ALC)(Feb. 7, 2022); *United States v. Delvecchio*, 19 CR 396 (NSR)(Dec. 9, 2021); *United States v. Williams*, 17 CR 397 (JMF)(Dec. 19, 2023).

And lastly, while many courts have remarked that "mere compliance" with conditions of release is insufficient reason to terminate supervision early, *see e.g., United States v Weiss*, 21 Cr. 457 (PMH), 2022 WL 3214914, *2 (S.D.N.Y. 2022), such language tends to be invoked mechanically, without much explanation as to what combination of factors actually warrants early termination. As Judge Glasser observed in *United States v Hutchinson*, 577 F.Supp.3d 134, 135 (E.D.N.Y. 2021):

> If good behavior, reintegration into society, satisfaction of all conditions of supervised release, and resumption of pre-incarceration life do not constitute the exceptional behavior contemplated in the precedents ****, precisely what do the precedents require of the supervisee to be discharged prematurely from supervised release? The almost formulaic repetition that good behavior and reintegration into society is not enough is reminiscent of the observation of Justice Holmes *** that '[i]t is one of the misfortunes of law that ideas become encrusted in phrases and thereafter for a long time cease to provoke further analysis.
>
> It is not only the citation to the precedents that have discouraged analysis, but also an expansive reading of the relevant statutes, which authorizes the early termination of supervised release if the conduct of the defendant warrants it, and an unfamiliarity with the legislative history of supervised release. That legislative history is informative and important Senate Report No. 98-225, which discusses the inclusion of a sentence of supervised release after imprisonment, clearly states "the sentencing purposes of incapacitation and punishment would not be served by a term of supervised release—

5

that **the primary goal of such a term is to ease the defendant's transition into the community** after the service of a long prison term ...." S. Rep. No. 98-225, at 124 (1983) (emphasis added); *see also United States v. Johnson*, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (discussing purpose of supervised release). Denial of a request for early termination of supervised release by a defendant whose behavior has been good, who has reintegrated into society, and who satisfied all other conditions of supervised release, would suggest that the denial is for punishment and not rehabilitation.

*United States v. Hutchinson*, 577 F. Supp. 3d 134 (E.D.N.Y. 2021).

For these reasons, I respectfully ask the Court to terminate Jason Christian's supervision. The §3553 factors support it, the Guide to Judiciary Policy supports it, and Mr. Christian's record of compliance supports it. A continued period of supervised release is unnecessary for deterrence, protection of the public or to reflect the seriousness of the offense for which the defendant has already completed his custodial term and the first 28 months of his supervised release term. There is no further purpose, I believe, for the resources of the Probation Department to be spent on him. I therefore respectfully request that the Court terminate the term of Supervised Release.

Respectfully submitted,

David Wikstrom